

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Doctor S. M. Lister, Chairman
Texas Prison Board
Second National Bank Building
Houston, Texas

Dear Sir:

Opinion No. O-4138
Re: Does the Texas Prison
Board have the legal
right to refuse the
described people ad-
mission to the Prison
System for the purpose
they desire?

      You have requested our opinion on whether or not the Prison Board has the legal right to refuse certain persons admission to the Prison System for the purpose of making a private investigation of the affairs of the System. In order to do justice to the question, we deem it necessary to quote in full the statements of fact contained in your inquiry:

    "There is a group of men going about the Prison System making what they term 'private investigation' as to the management of the System.

    "Their method is to get a group of convicts off away from the farm officials and discuss with them the general management of the farm and the treatment of the prisoners. They wind up their investigation by asking the inmates if it is their desire that certain employees of the unit be discharged from the System. They also make talks to the prisoners as to how they think the System should be run and leave them with the assurance that there will be new faces at the unit soon. A procedure of this kind has a very demoralizing effect on

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

the prisoners and the personnel of the unit
they visit, as the employees do not know whom
they represent or the purpose of their visit.

"I should like to have you give me a rul-
ing as to whether or not the Prison Board has
the legal right to refuse these people admission
to the Prison System for the purpose they desire.
Please understand that the Prison Board has no
objection whatever to an investigation if it is
an official one; however, we do object to these
people who have no connection whatever with the
System or any State organization coming in and
upsetting the morale of our inmates."

Among the laws now in force, relating to the conduct
and management of the Texas Prison System, are the following
statutes and parts of statutes found in Vernon's Revised Civil
Statutes of 1925:

"Art. 6166g. Control of prison system

"The Texas Prison Board, together with the
manager hereinafter provided for, shall be vest-
ed with the exclusive management and control of
the Prison System, and all properties belonging
thereto, subject only to the limitations of this
Act, and shall be responsible for the management
of the affairs of the Prison System and for the
proper care, treatment, feeding, clothing and
management of the prisoners confined therein."

"Art. 6166j. Manager's authority and pay

"The Texas Prison Board shall employ a gen-
eral manager of the prison system, who shall
possess qualifications and training which suit
him to manage the affairs of a modern penal
institution, and it shall be his duty to carry
out the policies of the Texas Prison Board.
The Board shall manage and control the prison
system through the manager selected by it.
* * *. The Board shall delegate to such man-
ager authority to manage the affairs of the
prison system, subject to its control and
supervision. * * *. The manager, with the

consent of the Texas Prison Board, shall
have power to prescribe reasonable rules
and regulations governing the humane treat-
ment, training and discipline of prisoners,
and to make provision for the separation
and classification of prisoners according
to sex, color, age, health, corrigibility,
and character of offense upon which the
conviction of the prisoner was secured."

"Art. 6166x. Labor of prisoners

"Prisoners shall be kept at work under
such rules and regulations as may be adopted
by the manager with the Board's approval;
* * *."

"Art. 6166z2. Visitors admitted

"The Governor, and all other members of
the Executive and Judicial Departments of the
State and members of the Legislature shall be
admitted into the prisons, camps and other
places where prisoners are kept or worked, at
all proper hours, for the purpose of observ-
ing the conduct thereof, and may hold conversa-
tion with the convicts apart from all prison
officers. Other persons may visit the pen-
itentiary under such rules and regulations as
may be established." (Underlining ours)

We have quoted these statutory provisions for the pur-
pose of presenting a fairly complete picture of the extent of
the Prison Board's general powers with respect to the regulation
and control of the Prison System. There are certain limitations
on these powers, set out in the statutes relating to penitentia-
ries (Title 108, Vernon's Revised Civil Statutes of 1925), but
none of them restrict the Board's power in the matter complained
of.

You state that the persons who have undertaken a "pri-
vate investigation" of the Prison System, advising the prisoners
"as to how the System should be run," and assuring them "that
there will be new faces at the unit soon," have no connection
whatever with the System or any State organization. It does not

Doctor S. M. Lister, Page 4


take a student of penology to see the inherent evils in such a junket. Article 6166z2, above quoted, taken in connection with the other statutes cited, gives the Prison Board authority to stop it. No more authority is needed.

It is therefore our opinion that the Texas Prison Board has the legal right to refuse such persons admission to the Prison System for the purposes stated in the quoted portion of your letter.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By
/s/          W. R. Allen
                 Assistant

Approved Dec 30 1941

/s/ Grover Sellers
First Assistant
Attorney General

Approved:  Opinion Committee
By BWB, Chairman


WRA:RS


O. K.: BW